# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CARLA BROOKINS, on behalf of herself
and all others similarly situated

    *Plaintiff,*

vs.

SUPERIOR MANAGEMENT GROUP,
INC.,

    *Defendant.*

Case No. 13-2051-EFM-JPO

## MEMORANDUM AND ORDER

This matter is before the Court on a Motion to Compel Arbitration (Doc. 4) filed by Defendant Superior Management Group, Inc., in a wage-and-hour lawsuit asserted by former employee Carla Brookins. Specifically, Superior asks the Court to enforce an arbitration agreement that Brookins signed during the course of her employment. Superior has asked this Court to compel arbitration and to dismiss Brookins' complaint or stay proceedings. For the following reasons, the Court grants Defendant's Motion to Compel Arbitration and orders the proceedings stayed.

### I.     Factual and Procedural Background

Carla Brookins worked for Superior in Overland Park, Kansas, as an hourly office employee. Superior sells and markets DirecTV digital television services in Kansas and

Missouri. On May 22, 2012, Brookins signed two documents, one titled "General At-Will Employment Agreement" ("Employment Agreement") and another titled "Mandatory Arbitration of All Claims Policy" ("Arbitration Policy"). Sean Gustavson signed the Employment Agreement as president of Superior, but only Brookins signed the Arbitration Policy.

The Employment Agreement contains the following provision:

ENTIRE AGREEMENT: This Agreement sets forth the entire agreement and understanding between Company and Employee and supersedes any prior negotiations, commitments and agreements, express or implied, whether oral or in writing, between Company and Employee with respect to the subject matter of this Agreement. Further, this Agreement may only be changed or modified by an agreement in writing with respect to the subject matter of this Agreement. Further, this Agreement may only be changed or modified by an agreement in writing signed by the President of Company.[1]

The Employment Agreement also contains provisions covering Brookins' job description, pay, an acknowledgment that she is an at-will employee, and no-solicitation and no-compete clauses.

The Arbitration Policy contains the a provision binding both parties to arbitration:

Employer and Employee agree that all claims, disputes, controversies, or disagreements of any kind whatsoever arising out of or relating to any employment at-will agreement entered into between the parties, and/or Employee's employment with Employer, and which may have occurred prior to or after entering into this arbitration agreement (other than claims Employee may have for workers' compensation or unemployment insurance benefits), shall be submitted to binding arbitration. Employer and Employee agree that the requirement to arbitrate shall also apply to any claim that may arise out of or relate to Employee's employment and which Employee may assert against Employer's employees, officers, directors, agents, suppliers or service providers, in their capacity as such, whether an individual or entity.[2]

The Arbitration Policy also contains a clause that purports to waive both parties' right to a jury trial and right to participate in a class action.

---

[1] Doc. 9, Exh. 1.

[2] Doc. 5, Exh. 2.

## II.     Legal Standard

Arbitration is a matter of contract, and a party must arbitrate only those disputes that they have agreed to submit to arbitration.[3] If a contract contains an arbitration provision, there is a presumption of arbitrability.[4] Whether the parties agreed to arbitrate a dispute is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.[5] Whether there is an enforceable arbitration agreement is a matter of state contract law to be decided by the court.[6] A defendant seeking to compel arbitration has the initial burden to show enough evidence of an enforceable agreement to arbitrate. If the defendant meets this burden, the plaintiff must show a genuine issue of material fact as to the validity of the agreement.[7] Doubts should be resolved in favor of arbitration.[8]

The Federal Arbitration Act provides that arbitration agreements are valid and enforceable subject to the same legal grounds for the revocation of any contract.[9] A federal district court may compel arbitration when it would have jurisdiction in the underlying dispute.[10] Finally, a court must stay litigation on a matter that the parties have agreed to arbitrate.[11]

---

[3] *AT & T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 648 (U.S. 1986); *WIHO, L.L.C. v. Hubbauer*, 2013 WL 3756547, at *1 (D. Kan. July 15, 2013).

[4] *AT & T Techs.*, 475 U.S. at 650; *Gratzer v. Yellow Corp.*, 316 F. Supp. 2d 1099, 1103 (D. Kan. 2004).

[5] *AT & T Techs.*, 475 U.S. at 649; *Gratzer*, 316 F. Supp. 2d at 1103.

[6] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 777 (10th Cir. 2010). This Court applies Kansas law because the documents were signed in Kansas.

[7] *SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1263 (D. Kan. 2003).

[8] *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S.Ct. 2847, 2857 (U.S. 2010); *Newmont U.S.A. Ltd. v. Ins. Co. of North America*, 615 F.3d 1268, 1275 (10th Cir. 2010).

[9] 9 U.S.C. § 2.

[10] 9 U.S.C. § 4.

[11] 9 U.S.C. § 3.

### III. Analysis

Brookins attacks the validity of the Arbitration Policy for two reasons. First, Brookins argues that there is no mutuality in the Arbitration Policy because no one from Superior signed it. Second, Brookins argues that the Employment Agreement does not provide for arbitration and purports to be the entire agreement between the parties, rendering the Arbitration Policy inadmissible parol evidence. Superior, on the other hand, argues that both documents are valid. As the defendant seeking to compel arbitration, Superior has the initial burden to show an enforceable arbitration agreement.[12]

#### 1) Superior's Signature Is Not Required to Validate the Arbitration Policy

The Federal Arbitration Act requires that an arbitration agreement must be in writing.[13] It is not necessary that a party sign the writing containing the arbitration class for it to be enforceable.[14] This general rule applies even if only one party signed the writing and the non-signing party seeks to compel arbitration, unless the writing expressly requires the signature of both parties before it becomes effective.[15] It is immaterial whether a defendant's representative signed an arbitration agreement.[16] Here, only Brookins signed the Arbitration Policy. Under the law, Superior's failure to sign the Arbitration Policy does not render it unenforceable because an arbitration agreement does not require either party's signature to be enforceable.

---

[12] *SmartText*, 296 F. Supp. 2d at 1263.

[13] 9 U.S.C. § 2.

[14] *Med. Dev. Corp. v. Indus. Molding Corp.*, 479 F.2d 345, 348 (10th Cir. 1973) ("All that is required is that the arbitration provision be in writing.").

[15] See *B-S Steel of Kan., Inc. v. Tex. Indus., Inc.*, 321 F. Supp. 2d 1214, 1219 (D. Kan. 2004).

[16] *Perkins v. Rent-A-Center, Inc.*, 2004 WL 1047919, at *3 (D. Kan. May 5, 2004); *Collie v. Wehr Dissolution Corp.*, 345 F. Supp. 2d 555, 558 (M.D.N.C. 2004).

The Arbitration Policy also states that "continuing to remain employed by employer" counts as acknowledgment of an agreement to be bound by mandatory arbitration.[17] Brookins argues that continued employment, without more, does not constitute acceptance, citing a case from the Missouri Court of Appeals.[18] But the Tenth Circuit has held that continued employment after being made aware of an arbitration policy constitutes acceptance by performance of the terms of an arbitration policy.[19]

Here, Brookins accepted Superior's offer both by signing the policy and by continuing as an at-will employee of Superior. Mutual promises to arbitrate, binding both parties, constitute sufficient consideration.[20] Therefore, Brookins' arguments that the Arbitration Policy is an invalid contract for lack of mutuality or consideration fail.

**2) The Arbitration Policy Constitutes a Valid Separate Agreement**

Brookins' second argument asserts that the Arbitration Policy is invalid because it does not constitute a valid modification of the Employment Agreement under terms required by the Employment Agreement. Brookins also argues that the Arbitration Policy is invalid because the Employment Agreement contains an integration clause indicating that it is the entire agreement between the parties. Both arguments fail because the Arbitration Policy does not modify the Employment Agreement and because the Arbitration Policy is not excluded by the Employment Agreement's integration clause.

---

[17] Doc. 5, Exh. 2.

[18] *Kunzie v. Jack-in-the-Box, Inc.*, 330 S.W.3d 476, 482-86 (Mo. App. 2010).

[19] *Hardin v. First Cash Fin. Servs, Inc.*, 465 F.3d 470, 477-78 (10th Cir. 2006). *See also Rangel v. Hallmark Cards, Inc.*, 2010 WL 781722, at *7 (D. Kan. March 4, 2010) (applying Kansas contract law to reach same result as *Hardin*).

[20] *Pennington v. Northrop Grumman Space & Mission Sys. Corp.*, 269 Fed. Appx. 812, 819-20 (10th Cir. 2008); *Rangel*, 2010 WL 781722, at *7.

### a) The Arbitration Policy Does Not Modify the Employment Agreement

First, the Arbitration Policy is not a modification of the Employment Agreement, so it doesn't require the signature of Superior's president as stated in the Employment Agreement. Under Kansas law, a written contract may be modified by any subsequently executed contract.[21] Whether a term of a written contract has been modified by a later agreement is a question of fact for the trial court.[22] Modification of a contract requires mutual assent or a meeting of the minds.[23] Intent of the parties to modify a contract can be explicit or implied from their conduct if they do not continue to act according to the terms of the original contract.[24]

Here, nothing in the Arbitration Policy shows it was intended to modify the employment agreement. Rather, the Arbitration Policy makes three references to an employment at-will agreement with no indication that the arbitration policy is intended to modify the Employment Agreement. The subject matter of the Arbitration Policy is different than the subject matter of the Employment Agreement. Therefore, the Court finds that the Arbitration Policy is not a modification of the Employment Agreement. It does not require the signature of both parties.

### b) The Arbitration Policy Is Not Excluded by the Integration Clause

An integrated contract is a contract adopted as the entire agreement between the parties.[25] This means that the contract's terms cannot be contradicted by evidence of any prior agreement

---

[21] *Hill*, 603 F.3d at 777 (quoting *Owens v. City of Bartlett, Labette Cnty.*, 528 P.2d 1235, 1240 (Kan. 1974)).

[22] *Thoroughbred Assocs., L.L.C. v. Kansas City Royalty Co., L.L.C.*, 308 P.3d 1238, 1249 (Kan. 2013).

[23] *Idbeis v. Wichita Surgical Specialists, P.A.*, 112 P.3d 81, 93 (Kan. 2005).

[24] *Hutton Contracting Co. v. City of Coffeyville*, 487 F.3d 772, 788 (10th Cir. 2007) (applying Kansas law).

[25] *Naimie v. Cytozyme Labs., Inc.*, 174 F.3d 1104, 1112 (10th Cir. 1999).

or a contemporaneous oral agreement.[26] But just because a contract claims to be the entire agreement between the parties does not prohibit the court from looking beyond the document to see if other agreements exist between the parties.[27] Under Kansas law, the terms of an integrated contract may be supplemented by consistent additional terms.[28]

If two successive contracts conflict with each other, the later contract supersedes the earlier one.[29] But a second contract dealing with different subject matter than the first contract does not replace the first contract.[30] The Tenth Circuit has recognized that two contracts between the same parties made as part of one transaction are to be taken together.[31] Generally, evidence not contained in a contract is not admissible to contradict, alter, or vary its terms, but it is admissible to help interpret a silent or ambiguous contract.[32] If a contract is complete, unambiguous, and free from uncertainty, parol evidence of prior or contemporaneous agreements that vary the terms of the written contract is inadmissible.[33]

---

[26] *Cravotta v. Deggingers' Foundry, Inc.*, 215 P.3d 636, 641 (Kan. App. 2009).

[27] *Blackledge v. Allison*, 431 U.S. 63, 75 n.6 (U.S. 1977); *U.S. v. Rockwell Int'l Corp.*, 124 F.3d 1194, 1199 (10th Cir. 1997) (citing Restatement (Second) of Contracts § 209 comment b).

[28] *Cravotta*, 215 P.3d at 641-42.

[29] *Hill*, 603 F.3d at 777 (citing *Fleetwood Enters., Inc. v. Coleman Co.*, 161 P.3d 765, 774 (Kan. App. 2007)). See also 17A C.J.S. § 574 ("The general rule is that when parties enter into a second contract dealing with the same subject matter as their first contract without stating whether the second contract operates to discharge or substitute for the first contract, the two contracts must be interpreted together and the latter contract prevails to the extent they are inconsistent.").

[30] 17A C.J.S. Contracts § 574.

[31] *SCO Group, Inc. v. Novell, Inc.*, 578 F.3d 1201, 1211 (10th Cir. 2009) (applying California contract law). See also *Jaguar Land Rover North America, LLC v. Manhattan Imported Cars, Inc.*, 477 Fed. Appx. 84, 88 (4th Cir. 2012) ("However, when separately-executed contracts between the same parties do not have conflicting provisions and are entered into as part of a single transaction, those agreements will be construed together even when they are executed at different times and do not refer to each other.").

[32] *Thoroughbred Assocs.*, 308 P.3d at 1247.

[33] *Ribeau v. Katt*, 681 F.3d 1190, 1196 (10th Cir. 2012); *In re Estate of McLeish*, 307 P.3d 221, 229 (Kan. App. 2013).

Here, Brookins signed two documents on the same day. It is not clear which was signed first. The form Employment Agreement includes provisions covering the employee's job description, confidentiality, and nonsolicitation and noncompete restrictions. The agreement also has a provision addressing the company's right to injunctive relief to enforce the confidentiality, no-compete, and no-solicitation provisions. The provision stating that the document is the entire agreement between the parties applies "with respect to the subject matter of this Agreement." The subject matter of the agreement is presumed to be contained in its other provisions.

The Arbitration Policy, on the other hand, does not address any of the same subject matter with the exception of the right to injunctive relief. The policy states that the employer and employee agree to resolve disputes through arbitration and covers the nature of the dispute, the controlling law, the conduct of arbitration, and both parties' waiver of a jury trial and participation in a class action. Further, the form policy makes three references to an employment at-will agreement between the parties. The terms of the Arbitration Policy do not contradict or vary any of the terms in the Employee Agreement. The provision of the Employment Agreement declaring it to be the entire agreement between the parties limits the provision to the subject matter of the agreement. The parties intended that both documents be construed and enforced together as evidenced by the fact that both documents were signed on the same day.[34]

Therefore, the Arbitration Policy is not excluded by the integration clause of the Employment Agreement because it concerns a different subject matter. The terms of the integration clause expressly limit its scope to the subject matter of the Employment Agreement. Specifically, the mandatory arbitration agreement isn't related to the subject of any provision in

---

[34] See *Jaguar Land Rover*, 477 Fed. Appx. at 88-89 (applying Maryland law).

the Employment Agreement. The Court finds that the Mandatory Arbitration of All Claims Policy signed by Brookins is valid. As a result, the Court grants Superior's Motion to Compel Arbitration and orders Brookins to arbitrate this action under the terms of the Arbitration Policy.

The final issue to decide is whether to stay the proceedings or dismiss Brookins' lawsuit. Superior contends that the lawsuit should be dismissed because all the issues raised must be submitted to arbitration, citing to appellate cases from other jurisdictions that have affirmed dismissals.[35] But Section 3 of the Federal Arbitration Act expressly provides that the court must stay the trial of the action on application of one of the parties if suit is filed "upon any issue referable to arbitration" under an arbitration agreement.[36] There is a circuit split about whether a district court has discretion to dismiss rather than stay an action subject to arbitration.[37] The Tenth Circuit has noted that courts are obligated to stay litigation, rather than dismiss the action, under Section 3 if at least one of the parties applies for a stay.[38] Here, Brookins has requested that the proceeding be stayed rather than dismissed. Accordingly, this Court declines Superior's request for dismissal but grants its Motion to Stay Proceedings under the authority of Section 3.

---

[35] See, e.g., *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

[36] 9 U.S.C. § 3.

[37] See *Noohi v. Toll Bros., Inc.*, 708 F.3d 599, 605 n.2 (4th Cir. 2013) (noting conflicting holdings); *Parrish v. Valero Retail Holdings, Inc.*, 727 F. Supp. 2d 1266, 1281 (D.N.M. 2010) (same).

[38] *Hill*, 603 F.3d at 771; *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994).

**IT IS ACCORDINGLY ORDERED** this 29th day of October, 2013, that Defendant's Motion to Compel Arbitration and Motion to Stay Proceedings (Doc. 4) are hereby **GRANTED**.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE